*893 OPINION OF THE COURT
Francesca E. Connolly, J.
This proceeding presents an issue of first impression for New York courts as to whether different municipalities may simultaneously attempt to annex the same territory. For the reasons that follow, this court holds that the common-law prior jurisdiction rule should be followed to the extent that, once the municipal annexation process has commenced by the filing of a petition for annexation, the affected municipalities shall have exclusive jurisdiction over any annexation of the subject territory until the annexation process is finally concluded.
Factual and Procedural Background
The Annexation Petitions
On December 27, 2013, certain owners of property located in the Town of Monroe filed a petition (hereinafter the KJ petition) for annexation of approximately 510 acres of Monroe territory to the neighboring Village of Kiryas Joel. The municipal boards of Kiryas Joel and Monroe both issued notices of intent to serve as lead agency to complete the required State Environmental Quality Review Act (SEQRA) review process. On January 28, 2015, the Commissioner of the Department of Environmental Conservation rendered a determination designating the Village Board of Kiryas Joel as lead agency.
Separately, a year later on December 30, 2014, a group of Monroe residents filed two petitions for the annexation of: (1) 336 acres from Monroe to the Town of Blooming Grove; and (2) for the simultaneous annexation of the same 336 acres from Monroe to the Village of South Blooming Grove.[1] The territory that is the subject of these petitions (hereinafter collectively referred to as the BG/SBG petitions) overlaps the territory proposed for annexation in the KJ petition in that it includes approximately 228 acres of the same territory that is the subject of the KJ petition, and further seeks the annexation of approximately 108 acres that is not part of the KJ petition.
The Instant CPLR Article 78 Proceeding
The petitioners, who are signatories to the KJ petition, and whose properties overlap with the territory sought to be annexed by the BG/SBG petitions, commenced this proceeding *894 pursuant to CPLR article 78 for a writ of prohibition restraining Blooming Grove, South Blooming Grove, and Monroe (hereinafter the respondent municipalities) from taking any action on the BG/SBG petitions. The petitioners’ order to show cause also requests a preliminary injunction restraining the respondent municipalities from calling a joint public hearing with respect to the BG/SBG petitions, and from assuming lead agency status for purposes of compliance with SEQRA regarding those petitions.
In their first cause of action, the petitioners contend that, pursuant to the “prior jurisdiction” rule, the municipalities implicated in the BG/SBG petitions lack jurisdiction to entertain those petitions pending a final determination on the KJ petition. Accordingly, the petitioners seek a writ of prohibition temporarily staying the respondent municipalities from action on the BG/SBG petitions.
In their second cause of action, the petitioners contend that the BG/SBG petitions were filed for the unlawful purpose of attempting to block the KJ petition. According to the petitioners, the individual respondents are members of an organization entitled “United Monroe,” which publicly opposes the annexation of lands to Kiryas Joel. In public statements to the media, members of United Monroe have said that the BG/SBG petitions were filed to “counteract” the KJ petition. Accordingly, the petitioners contend that the BG/SBG petitions were filed for an “improper and vexatious purpose” and are, therefore, facially invalid. As relief for this cause of action, the petitioners seek a writ of prohibition permanently enjoining the municipalities from exercising jurisdiction over the BG/SBG petitions.
The Municipal Respondents’ Answers, Counterclaims, and Cross Claims
Blooming Grove submits an answer asserting three affirmative defenses: (1) that a municipal board, as a legislative body, cannot be restrained by a writ of prohibition; (2) that the petitioners cannot establish a clear legal right to prohibition since no New York statute or case law supports the use of the prior jurisdiction rule to stay the processing of a municipal annexation petition; and (3) the petitioners’ second cause of action alleging that the BG/SBG petitions were improperly filed is not ripe for review, since no hearing has yet been held on the merits of the petition.
South Blooming Grove submits an answer containing counterclaims and cross claims for declaratory relief. South *895 Blooming Grove contends that the time frames concerning compliance with the Municipal Annexation Law and SEQRA are in conflict and cannot be reconciled. Accordingly, South Blooming Grove requests a declaration as to: (1) whether the time constraints set forth in the Municipal Annexation Law must be followed to the extent that they conflict with the time constraints set forth in SEQRA; and (2) whether South Blooming Grove is required to process the BG/SBG petitions. In an affirmation in support, South Blooming Grove’s attorney states that South Blooming Grove will refrain from processing the BG/SBG petitions pending resolution of this CPLR article 78 proceeding.
Monroe submits an answer asserting counterclaims and cross claims for: (1) a declaration regarding its responsibilities under the Municipal Annexation Law and SEQRA; and (2) a declaration that it is permitted to process the BG/SBG petitions while simultaneously processing the KJ petition involving some of the same parcels of land. In an affirmation in support, Monroe’s attorney states that Monroe has refrained from moving forward with the BG/SBG petitions pending resolution of this CPLR article 78 proceeding.
Kiryas Joel submits an answer supporting the petition in its entirety and asking the court to issue the writ of prohibition.
The Individual Respondents’ Motion to Dismiss
The individual respondents submit a pre-answer motion to dismiss the proceeding pursuant to CPLR 3211 (a) (2), (3), and (7), arguing that the petition is not ripe, that the petitioners lack standing, and that the petition fails to state a cause of action. The individual respondents further contend that the petitioners are not entitled to a preliminary injunction staying the respondent municipalities from calling a joint public hearing with respect to the BG/SBG petitions.
In an affidavit, the respondent John N. Allegro avers that he is a signatory to the BG/SBG petitions, that he witnessed the signatures on those petitions and was responsible for filing them, and that he resides within the area proposed for annexation to Blooming Grove and South Blooming Grove. Allegro claims that the BG/SBG petitions were filed in good faith for the purposes of receiving community services and benefits from those municipalities. He further contends that one of the petitioners in this proceeding, Simon Gelb, also filed a separate petition for the annexation of 164 acres from Monroe to Kiryas Joel, located wholly within the 510-acre area that is the subject *896 of the KJ petition. Allegro contends that, since the second petition for annexation of land from Monroe to Kiryas Joel has proceeded concurrently with the KJ petition, the BG/SBG petitions are entitled to the same type of concurrent review.
In a memorandum of law, the individual respondents contend that the petition should be dismissed as a matter of law since a writ of prohibition may not be obtained over a legislative body performing a legislative or quasi-legislative function. The individual respondents contend that the prior jurisdiction rule does not apply to annexations in New York, noting that the issue has never been addressed in this jurisdiction. The individual respondents also claim that, although they filed the BG/ SBG petitions for a legitimate purpose, the Municipal Annexation Law does not include any such requirement. Further, the individual respondents contend that this CPLR article 78 proceeding is not ripe and was filed prematurely, as the respondent municipalities have taken no action under SEQRA and no public hearing has been held. Finally, the individual respondents contend that the petitioners lack standing to commence this CPLR article 78 proceeding insofar as they fail to demonstrate that they would suffer any injury in fact if the annexation petitions were to proceed simultaneously.
Kiryas Joel’s Opposition to the Motion to Dismiss and in Support of the Petition
Kiryas Joel submits opposition to the individual respondents’ motion to dismiss and in further support of the petition.
In an affirmation, Gedalye Szegedin, Village Administrator and Village Clerk of Kiryas Joel, affirms, among other things, that the public record demonstrates that the BG/SBG petitions were filed for the illegitimate purpose of thwarting the KJ petition. According to Szegedin, Kiryas Joel has expended significant time and resources proceeding with the KJ petition, and should not be compelled to compete with the BG/SBG petitions. Rather, Szegedin argues that the just and orderly administration of government requires that the KJ petition be permitted to proceed to conclusion before new overlapping annexation petitions are heard.
In an affidavit, Kiryas Joel’s attorney contends that the individual respondents could have drawn the boundaries of their proposed annexation to Blooming Grove and South Blooming Grove in such a way to exclude any of the territory proposed to be annexed to Kiryas Joel. Thus, Kiryas Joel contends that this demonstrates the individual respondents’ *897 illegitimate intent to interfere with the annexation process of the KJ petition. Further, Kiryas Joel contends that the legislative history of the Municipal Annexation Law and SEQRA support the petitioners’ contention that the KJ petition should be heard in its entirety before the BG/SBG petitions are processed. Finally, Kiryas Joel contends that the respondent municipalities’ requests for declaratory relief regarding the integration of the Municipal Annexation Law and SEQRA are premature in that there is currently no controversy regarding that issue, and that a declaration with respect to that issue would constitute an improper advisory opinion by the court.
Blooming Grove’s Response to Cross Claims
With respect to Monroe and South Blooming Grove’s counterclaims and cross claims, Blooming Grove submits a memorandum of law asserting that no municipal annexation petition should be deemed complete, triggering the obligation to hold a hearing pursuant to General Municipal Law §§ 704 and 705, until the lead agency under SEQRA either: (1) adopts a negative declaration; or (2) accepts a draft environmental impact statement as complete.
The Petitioners’ Reply
In reply, the petitioners contend that, in light of the fact that all involved municipalities have voluntarily refrained from processing the BG/SBG petitions, a preliminary injunction is no longer necessary, thereby permitting this court to rule directly on the merits of this proceeding. In response to the individual respondents’ motion to dismiss, the petitioners contend that, as owners of property proposed for annexation by the BG/SBG petitions, they have standing to sue. The petitioners further contend that a municipality acting upon a petition for annexation does so in a quasi-judicial capacity, making such action subject to a writ of prohibition. Finally, the petitioners contend that the BG/SBG petitions were commenced for an illegitimate purpose, that the individual respondents occupy only a fraction of the area proposed for annexation, and that the respondent municipal boards should be permanently prohibited from acting on the annexation petition.
The Individual Respondents’ Reply
In reply, the individual respondents reiterate their position that municipal boards acting on an annexation petition do so in a legislative capacity and, therefore, are not subject to a writ of prohibition.
*898 Discussion/Analysis
I, Overview of Municipal Annexation
The minimum requirements for municipal annexation are embodied in the New York State Constitution, article IX, § 1, the Bill of Rights for Local Governments, which provides that
“[n]o local government or any part of the territory thereof shall be annexed to another until the people, if any, of the territory proposed to be annexed shall have consented thereto by majority vote on a referendum and until the governing board of each local government, the area of which is affected, shall have consented thereto upon the basis of a determination that the annexation is in the overall public interest” (NY Const, art IX, § 1 [d]).
The Constitution further provides for a proceeding in Supreme Court where the consent of a local government is not granted, “for adjudication and determination, on the law and the facts ... of the issue of whether the annexation is in the over-all public interest” (id,.).
The “Municipal Annexation Law,” codified at General Municipal Law article 17, contains substantive and procedural requirements for annexation, which is defined as “[a]n alteration of the boundaries of a county, city, town or village which has the effect of adding territory to it” (General Municipal Law § 701 [1]).
The first formal step in the annexation process is the filing of a petition signed by either: (1) at least 20% of the residents of the area proposed for annexation; or (2) by the owners of a majority of the assessed valuation of the real property in the area proposed for annexation (see General Municipal Law § 703 [l]).[2] Within 20 days of receipt of a petition for annexation, the affected municipalities must publish a notice of a joint public hearing to take place not less than 20 days nor more than 40 days after the publication of such notice (see General Municipal Law § 704). At the public hearing, testimony and evidence may be offered as to whether the signatories to the petition were qualified to sign, whether the petition contains an adequate number of signatures, whether the petition complies with all form and content requirements, and whether the proposed an *899 nexation is not in the “over-all public interest” of the affected municipalities (see General Municipal Law § 705 [1]). The hearing may be adjourned, but must be concluded within 10 days of the date fixed in the public notice (see General Municipal Law § 705 [2]).
Within 90 days after the hearing, the governing board of each affected municipality must determine, by majority vote, whether the petition for annexation meets all substantive and procedural requirements and, if so, whether the proposed annexation is in the overall public interest (see General Municipal Law § 711 [1]). If a governing board fails to timely file a written order setting forth its determination, the board “shall be deemed to have approved the proposed annexation as of the expiration of the ninety-day period” (see General Municipal Law § 711 [2] [b]).
Depending on the outcome of the governing boards’ votes, there are essentially three paths for the annexation petition:
First, if the governing boards of all affected municipalities determine that the proposed annexation is in the overall public interest,[3] then the proposal shall be the subject of a special election of the residents of the proposed annexation area and any persons residing in a parcel of land where a portion of such parcel lies within the annexation area (see General Municipal Law § 713 [1]). Such election shall be held within 90 days of the filing of the resolutions of the affected governing boards (see General Municipal Law § 713 [1]). If a majority of the residents approve the referendum, then the annexation becomes effective (see General Municipal Law §§ 713, 714 [1]).
Second, if the governing boards of one or more, but not all, municipalities determine that the annexation is in the overall public interest, then the governing board of any affected municipality may, within 30 days, apply to the Appellate Division for an adjudication, on the law and the facts, of the issue of whether the proposed annexation is in the overall public interest (see General Municipal Law § 712 [1]). The Appellate Division is required to designate three referees, one of whom must be either a retired or sitting justice of the Supreme Court, to hear and report on the matter after conducting a nonjury trial (see General Municipal Law § 712 [6]). The referees must *900 file their report within 30 days after final submission of the matter (see General Municipal Law § 712 [9]) and, thereafter, the Appellate Division is required to render its own determination as to whether the proposed annexation is in the overall public interest (see General Municipal Law § 712 [10]). If the Appellate Division determines that the proposed annexation is in the overall public interest, then the issue must, within 90 days of the entry of judgment, be placed on the ballot in a special election (to be conducted in the same manner as if the proposed annexation was approved by all affected municipalities) (see General Municipal Law § 713 [1]).
Third, if the governing boards unanimously determine that the proposed annexation is not in the overall public interest, then such determination is final and the process is concluded without annexation (see General Municipal Law § 711 [4]).
Additionally, the Court of Appeals has held that annexations are “actions” subject to review under SEQRA, which review must be completed prior to each municipal board’s vote on the proposed annexation (see Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie, 3 NY3d 508 [2004]).
II. The Individual Respondents’ Motion to Dismiss is Granted in Part
A. Petitioners’ Standing
Contrary to the individual respondents’ contention, the petitioners have standing to maintain this proceeding.
A person has standing to challenge governmental action by showing that he or she “would suffer direct harm, injury that is in some way different from that of the public at large” (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 774 [1991]) and “the in-fact injury of which [he or she] complains . . . falls within the ‘zone of interests,’ or concerns, sought to be promoted or protected by the statutory provision under which the [governmental entity] has acted” (id. at 773, quoting Lujan v National Wildlife Federation, 497 US 871, 883 [1990]).
Here, the petitioners, as owners of property within the area proposed to be annexed by the BG/SBG petitions, have a “direct interest in the administrative action being challenged, different in kind or degree from that of the public at large” (see Society of Plastics Indus. v County of Suffolk, 77 NY2d at 775).
Further, the interests of owners of taxable property within a proposed annexation area fall within the “zone of interests” of the Municipal Annexation Law. Notably, owners of property *901 within the annexation area have special statutory rights, such as the right to receive formal notice of any joint public hearing (see General Municipal Law § 704 [1] [“The governing board of each affected local government in which such territory is situated also shall cause a copy of such notice to be mailed to each person or corporation owning real property in such territory” (emphasis added)]), and owners of taxable property within the annexation area who participate in public hearings on the annexation are entitled to intervene as of right in an adjudication in the Appellate Division if the municipal boards disagree as to whether the annexation is in the overall public interest (see General Municipal Law § 712 [4] [b]).
Moreover, under the circumstances, by virtue of their statutory right to receive formal notice of any joint public hearing on the BG/SBG petitions, the petitioners are entitled to a presumption of standing to bring this proceeding. The Court of Appeals has held, in the context of a zoning challenge, the fact that a person is entitled to receive mandatory notice of an administrative hearing because he or she owns adjacent or nearby property gives rise to a presumption to standing (see Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 413-414 [1987] [“The fact that a person received, or would be entitled to receive, mandatory notice of an administrative hearing because it owns property adjacent or very close to the property in issue gives rise to a presumption of standing in a zoning case”]). To the extent that an annexation is a government action of equal, if not more, significance to the affected community members, the same presumption of standing should apply to the petitioners by virtue of their entitlement to receive notice under the Municipal Annexation Law.
Accordingly, the branch of the individual respondents’ motion which is to dismiss the proceeding for lack of standing is denied (see CPLR 3211 [a] [3]).
B. Whether the Petition States a Cause of Action
The branch of the individual respondents’ motion which is to dismiss this proceeding on the ground that a writ of prohibition is not available is granted in part. For the reasons that follow, the court finds that a writ of prohibition is procedurally available with respect to the petitioners’ first cause of action alleging that the respondent municipalities lack jurisdiction to entertain the BG/SBG petitions. However, a writ of prohibition is not an appropriate remedy with respect to the petitioners’ *902 second cause of action alleging that the BG/SBG petitions were commenced for an illegitimate purpose and, therefore, that cause of action is dismissed.
CPLR 7803 (2), which represents the modern codification of the writ of prohibition, provides that a petitioner may commence a proceeding to determine “whether [a] body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction” (CPLR 7803 [2]; see Siegel, NY Prac § 559 [5th ed]).
“A writ of prohibition may be obtained only when a clear legal right of a petitioner is threatened by a body or officer acting in a judicial or quasi-judicial capacity without jurisdiction in a matter over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction” (Matter of Morgenthau v Erlbaum, 59 NY2d 143, 147 [1983] [internal quotation marks omitted]).
It is well-established that “prohibition does not lie against strictly administrative action, but only against judicial and quasi-judicial action. When brought against an administrative official, the latter must therefore be shown to be exceeding jurisdiction in some quasi-judicial capacity” (Siegel, NY Prac § 559 [5th ed]; see also Matter of American Tr. Ins. Co. v Corcoran, 65 NY2d 828, 830 [1985] [“Prohibition is not available to prevent administrative action unless the agency is acting in a judicial or quasi-judicial capacity”]). Further, a writ of prohibition is unavailable where the action is purely legislative, executive, or ministerial (see Matter of Suffolk County Legislature v Mullen, 211 AD2d 736, 737 [2d Dept 1995]).
In the case of a petition for annexation, the role of a municipal board is quasi-judicial in nature and, therefore, a writ of prohibition is available. The fundamental question in the annexation process is whether the proposed annexation is in the “over-all public interest.” The initial responsibility for answering this question lies with the affected municipal boards, after conducting a hearing. If the boards disagree, then the question of “over-all public interest” may be submitted to the Appellate Division. Notably, the Court of Appeals has characterized the Appellate Division’s role in annexation matters as “quasi-legislative” (see Matter of City of Utica v Town of Frankfort, 10 NY3d 128, 133 [2008]). The prefix “quasi-“ indicates that, while the Appellate Division’s role is partially *903 legislative, its function is not purely a legislative one (see Black’s Law Dictionary [9th ed 2009], quasi [“quasi” means “(s)eemingly but not actually; in some sense or degree; resembling; nearly”]). This implies that the Appellate Division’s function retains some judicial characteristics as well.
By extension and by analogy, it cannot be said that a municipal board’s function in the annexation process is purely legislative. While purely legislative action is typically initiated from within a legislative body itself and is subject to review only where it is unconstitutional or otherwise unlawful (see e.g. Board of Educ., Levittown Union Free School Dist. v Nyquist, 57 NY2d 27, 38-39 [1982]), in the case of the Municipal Annexation Law, the filing of an annexation petition triggers an affected municipal board to perform a number of uniquely non-legislative duties. For instance, the affected municipal boards are required to, among other things, provide notice to the public and directly affected parties, conduct public hearings, review the facial sufficiency of the annexation petitions, and adjudicate the merits of the petition by applying the “over-all public interest” standard of review (see General Municipal Law §§ 703, 704, 705). Looking at the Municipal Annexation Law as a whole, the statute imposes upon the affected municipal boards the duty, in the first instance, to ensure due process is carried out during the annexation procedure, much as a judicial body is required to ensure due process to those that come before it. Moreover, insofar as the Appellate Division has the power to substitute its judgment on the issue of “over-all public interest” (see General Municipal Law § 712), it cannot be said that the municipal boards are acting in a purely legislative capacity. Rather, a municipal board’s role in the annexation process is sufficiently quasi-judicial in nature to make a writ of prohibition available to restrain a board from acting upon an annexation petition where it lacks jurisdiction to do so.
In holding that a writ of prohibition is available, this court is also persuaded by the fact that, at this juncture, if the petitioners were denied the opportunity to challenge the jurisdiction of the affected municipal boards, they would not have an opportunity to raise the issue of jurisdiction in an alternative proceeding (cf. Matter of Gasland Petroleum, Inc. v Planning Bd. of Town of Beekman, 50 AD3d 1039, 1040 [2d Dept 2008] [“the petitioner failed to establish a clear legal right to the extraordinary remedy of prohibition or that its grievance cannot be adequately addressed by alternative proceedings, such as *904 a proceeding to review the Planning Board’s determination after it is made” (emphasis added)]; Matter of Fleetwood Tenants Assn. v New York State Div. of Hous. & Community Renewal, 176 AD2d 941, 941-942 [2d Dept 1991]; Town Bd. of Town of Wallkill v Owen, 127 AD2d 589, 590 [2d Dept 1987]). Within the Municipal Annexation Law itself, the grounds for seeking judicial review of a municipal board’s determination are limited to issues regarding the qualification of signatories to the annexation petition, whether the petitions contain a sufficient number of signatures, and matters of form and content (see General Municipal Law § 711 [3] [permitting commencement of CPLR article 78 proceeding to challenge board determination regarding matters set forth in General Municipal Law § 705 (a)-(d)]), or in a special proceeding to determine whether the proposed annexation is in the overall public interest (see Matter of Town of Monroe v Village of Woodbury, 110 AD3d 1086, 1087 [2d Dept 2013]).
However, although a writ of prohibition is procedurally available against a municipal board in the context of a municipal annexation proceeding, the remedy of prohibition is only available to prevent a body or officer from proceeding without jurisdiction (see Siegel, NY Prac § 559 [5th ed] [“The use of prohibition must always be related to a want of jurisdiction, or at least to an exercise of power so excessive as to be its equivalent”]; see also CPLR 7803 [2] [CPLR article 78 proceeding may be commenced to determine “whether (a) body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction” (emphasis added)]).
Here, the petitioners’ first cause of action alleging that the prior jurisdiction rule deprives the respondent municipalities of taking action on the BG/SBG petitions clearly relates to a matter of jurisdiction. Accordingly, without regard to the merits of the petitioners’ contention regarding the application of the prior jurisdiction rule (discussed in more detail below), the petitioners have stated a cause of action for a writ of prohibition (see CPLR 3211 [a] [7]).
However, the petitioners’ second cause of action contending that the BG/SBG petitions were commenced for an illegitimate purpose does not relate to a jurisdictional issue and, therefore, must be dismissed pursuant to CPLR 3211 (a) (7). The question of whether an annexation petition was filed for a proper reason is inherently subjective and, assuming, without deciding, that the purported legitimacy of an annexation petition *905 was a basis for its invalidation, it would be nearly impossible for a court to summarily render a determination on that issue. Since opinions regarding the legitimacy of an annexation petition are bound to differ, these issues are best resolved in the context of the annexation process itself, in which all interested parties have an opportunity to debate whether the proposed annexation is in the “over-all public interest” of the municipalities. It would be inconsistent with the Municipal Annexation Law to conduct a mini-trial on the issue of the alleged illegitimacy of the annexation petition, as to do so would usurp the roles of the affected municipal boards, the Appellate Division (if necessary), and the voting public in determining whether the annexation is in the “over-all public interest” of the community. In any event, the “legitimacy” of an annexation petition does not relate to a municipal board’s jurisdiction to process the petition and, therefore, a writ of prohibition is an inappropriate remedy for such an alleged wrong.
Accordingly, the branch of the individual respondents’ motion which is to dismiss the petitioners’ second cause of action is granted (see CPLR 3211 [a] [7]).
C. Ripeness under the Municipal Annexation Law and SEQRA
Further, the individual respondents’ contention that the matter is not ripe for adjudication, either under the Municipal Annexation Law or SEQRA, is without merit.
“The requirement of finality, important as a condition precedent to certiorari and sometimes to mandamus as well, is not applicable to prohibition. This recognizes that with prohibition the defect under attack is a want of subject matter jurisdiction or an exercise of power so excessive as to be its equivalent, which presumably authorizes an attack at any juncture” (Siegel, NY Prac § 559 [5th ed]; see Matter of Civil Serv. Empls. Assn. v Helsby, 31 AD2d 325, 330 [3d Dept 1969] [“If the board acted in excess of its authority in issuing such order, petitioner is entitled to a judgment vacating and annulling it without regard to the question of finality, because the provisions of CPLR 7801 limiting relief by way of article 78 have no application when the relief sought is in the nature of prohibition”], affd 24 NY2d 993 [1969]).
Accordingly, the branch of the individual respondents’ motion which is to dismiss the proceeding as unripe is denied (see *906 CPLR 3211 [a] [2]; see also Matter of Agoglia v Benepe, 84 AD3d 1072, 1076 [2d Dept 2011]).
III. The Petitioner’s First Cause of Action is Granted
A. The Court Will Rule Directly on the Merits of the Petition
Because the respondent municipalities have voluntarily refrained from processing the BG/SBG petitions, the court will rule directly on the merits of the petitioners’ first cause of action without ruling on the petitioners’ application for a preliminary injunction.
Further, given that the issue of whether the prior jurisdiction rule bars the BG/SBG petitions is a matter of law, and recognizing the need to expeditiously provide the parties with clarity regarding the ongoing annexation process, the court will proceed to determine the merits of the proceeding without affording the individual respondents the opportunity to file a formal answer (Matter of McBride v Perez, 80 AD2d 584, 584 [2d Dept 1981] [“we note that this case presents issues of law only and there exists no further issues which might be raised by answer concerning the merits of petitioners’ . . . petition”], affd 56 NY2d 563 [1982]; Matter of Vermont Marble Co. v Office of Gen Servs., 42 AD2d 468, 470 [3d Dept 1973] [“since there are no questions of fact, Special Term properly granted summary judgment to petitioner on the merits”]). In deciding to rule directly on the merits, the court notes that the individual respondents briefed the issue of whether the prior jurisdiction rule applies in their motion papers, and the court has considered those arguments in connection with its determination. Further, the court notes that, although the individual respondents are parties to this action, the writ of prohibition is sought against the municipal respondents, which have all filed answers to the petition.
B. The Common-Law Prior Jurisdiction Rule Prohibits Processing the BG/SBG Petitions
Turning to the merits, the court acknowledges that the petitioners have raised an issue of first impression in the State of New York. Although there are a handful of reported decisions that interpret the Municipal Annexation Law, none of those cases address the issue presented here.
After conducting an extensive review of binding and persuasive authorities, this court holds that the prior jurisdiction rule should be followed to the extent that, once the municipal annexation process has commenced by the filing of a *907 petition for annexation, the affected municipalities shall have exclusive jurisdiction over any annexation of the territory at issue until the annexation process is finally concluded.
Although no New York court has addressed whether the prior jurisdiction rule applies to annexation proceedings, the rule, which has its roots in British common law, has long been recognized in this state with respect to the pendency of prior judicial proceedings. The rule has typically been invoked to stay parties from seeking relief from another court of concurrent jurisdiction, where one court has already acquired jurisdiction over the matter. Thus, in Rogers v King, the court held that, despite the fact that the Chancery Court and Surrogate’s Court had concurrent jurisdiction to call an executor or administrator to account, the commencement of a proceeding in one of those courts would act as a bar to the commencement of a proceeding in the other (see Rogers v King, 8 Paige Ch 210, 211 [1840]). In its decision, the Rogers court cited to several English cases, including Moore v Prior, an 1837 determination of the Court of Exchequer in Equity, where the court held that a plaintiff could not seek relief from the court where prior proceedings in which the plaintiff could obtain the same relief had been commenced in the Court of Chancery.[4] This rule has continued to be followed in New York and was succinctly summarized by the Court of Appeals in Schuehle v Reiman:
“Where the object of two legal proceedings is the same, convenience as well as a proper regard for the rights of debtor and creditor require if possible that the fund in which both are interested should be subjected to diminution by one litigation only, and the parties themselves spared the unnecessary labor and expense of conducting two controversies over the same matter. It would seem also that if both tribunals, whose interference has been invoked, have equal or concurrent jurisdiction, it should continue to be exercised by that one whose process was first issued.” (Schuehle v Reiman, 86 NY 270, 273 [1881] [emphasis added]; see Colson v Pelgram, 259 NY 370, 375 [1932] [“the general rule that where separate actions have been instituted be *908 tween the same parties in reference to the same subject-matter in courts having concurrent jurisdiction the court which first obtains jurisdiction with adequate power to administer full justice should continue to exercise it”]; see also Woollard v Schaffer Stores Co., 272 NY 304, 311 [1936] [“When, however, another action between the same parties, in which all issues could be determined, is actually pending at the time of the commencement of an action for a declaratory judgment, the court abuses its discretion when it entertains jurisdiction”]; Zeglen v Zeglen, 150 AD2d 924, 925 [3d Dept 1989] [“in courts of concurrent jurisdiction of a particular subject matter the court first assuming jurisdiction should retain the action”]; Burmax Co. v B & S Indus., 135 AD2d 599, 601 [2d Dept 1987] [“The Supreme Court and the Surrogate’s Court have concurrent jurisdiction in matters involving decedent’s estates, and a guiding principle as to the invocation of each court’s jurisdiction is that if both tribunals, whose interference has been invoked, have equal or concurrent jurisdiction, it should continue to be exercised by that one whose process was first issued” (citations and internal quotation marks omitted)]; Obedin v Masiello, 4 AD2d 705, 705 [2d Dept 1957] [“the jurisdiction of the Supreme Court having been first invoked by appellants, the subsequent summary proceeding commenced by respondents in the District Court could not oust the Supreme Court of its prior jurisdiction”].)
The policy behind the rule is to prevent inconsistent determinations, to promote judicial economy, and to provide for the orderly administration of justice (see Colson v Pelgram, 259 NY at 375 [“The reason for the rule is obvious. It is conducive to economy, and lack of friction between courts, saves labor and annoyance and leads to the orderly administration of justice. There should be one action only to settle the rights of the parties, when all rights can be properly determined in a single action”]). This same rationale is cited by other courts that have recognized a similar rule (see e.g. Farmers’ Loan & Trust Co. v Lake Street Elevated R. Co., 177 US 51, 61 [1900] [“The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of coordinate jurisdiction from exercising a like *909 power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons” (emphasis added)]; Matlock v Matlock, 87 Or 307, 312-313, 170 P 528, 530 [1918] [“This principle is essential to the proper and orderly administration of the law and in order to avoid conflict in the rendition of final decrees. While its observance might be required on the grounds of judicial comity and courtesy, it does not rest upon such circumstances exclusively, but is usually enforced to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process”]).
A conflict between annexation proceedings in separate municipalities of concurrent jurisdiction presents a somewhat different scenario than a conflict between courts of concurrent jurisdiction. However, the appellate courts of nearly every other state[5] to have addressed this issue have held that the municipality to take the first formal step towards annexation acquires jurisdictional priority over any other municipality seeking to annex the same territory by virtue of the common-law prior jurisdiction rule (see Colquhoun v City of Tucson, 55 Ariz 451, 456, 103 P2d 269, 271 [1940] [“when one body has the authority to annex territory to a municipality, while another is given the jurisdiction to erect such territory into an independent municipality, the one which first obtains jurisdiction of proceedings for either purpose is entitled to retain it without interference by the other until the first proceedings are finally determined”]; City of Gosnell v City of Blytheville, 272 Ark 218, 219-220, 613 SW2d 91, 92 [1981] [“when two cities act at the same time to annex land the city which takes the first valid step toward annexation should be favored”]; People ex rel. Forde v Town of Corte Madera, 115 Cal App 2d 32, 38, 251 P2d 988, 991 [1st Dist 1952] [“The rule conferring priority on the first city to file is part of the public policy of the state. It was the rule at common law”]; City of Daytona Beach v City of Port Orange, 165 So 2d 768, 771 [Fla Dist Ct App, 1st Dist 1964] [“The same principle (of priority) governs priority of annexation privileges between existing municipalities attempting to annex the same territory”]; City of Countryside v Village of La Grange, 24 Ill 2d 163, 166, 180 NE2d 488, 489 [1962] [“Since Countryside’s annexation petition was on file in the county *910 court prior to the purported annexation by the village of La Grange, it necessarily follows . . . that La Grange had no power or authority to effect an annexation of the same territory so long as Countryside’s petition was on file and undefeated”]; Taylor v City of Ft. Wayne, 47 Ind 274, 282 [1874] [as to conflict between cities and towns to annex the same territory, “the jurisdiction becomes exclusive in the one before which proceedings are first instituted, and which thus acquires jurisdiction of the subject”]; City of Muscatine v Waters, 251 NW2d 544, 547 [Iowa 1977] [“Where, as in this case, there is a dispute between two municipalities as to which has the right to annex a given territory, the one first initiating such proceedings thereby obtains exclusive annexation jurisdiction” (citation omitted)]; Appeal of City of Lenexa to Decision of Bd. of County Commrs. of Johnson County, 232 Kan 568, 578, 657 P2d 47, 57 [1983] [“the city which takes the first valid step toward annexation of territory has priority over any other city which later seeks to annex, so long as the original proceeding is pending”]; City of Jeffersontown v City of Hurstbourne, 684 SW2d 23, 24 [Ky Ct App 1984] [“where two or more bodies politic have concurrent jurisdiction over the same area, the one first acquiring jurisdiction should prevail”]; State ex rel. Harrier v Village of Spring Lake Park, 245 Minn 302, 308, 71 NW2d 812, 816 [1955] [“We believe the sound rule, universal in its application, that ‘As between courts of co-ordinate jurisdiction, the tribunal first acquiring jurisdiction retains it, and is not to be interfered with by another co-ordinate court’ is applicable where, under different statutes vesting jurisdiction in different persons or authorities, the same territory is subject either to formation into a new municipality or to annexation to an existing municipality, the jurisdiction first invoked thereby becoming exclusive”]; City of St. Joseph v Village of Agency, 223 SW3d 171, 173-174 [Mo Ct App 2007] [“When two municipalities seek to annex the same territory, Missouri courts generally invoke the doctrine of prior jurisdiction to determine which one has authority to proceed”]; City of Burlington v Town of Elon Coll., 310 NC 723, 728, 314 SE2d 534, 537 [1984] [“the plaintiff City of Burlington, by adopting its Resolution of Intent to Annex on 19 April 1983Q took the ‘first mandatory public procedural step in the statutory process’ and thereby acquired prior jurisdiction of the disputed areas. Consequently, any subsequent attempts by defendant Town of Elon College to acquire jurisdiction were null and void”]; Amrep Southwest, Inc. v Town *911 of Bernalillo, 113 NM 19, 21-22, 821 P2d 357, 360 [1991] [“We hold that the doctrine of prior jurisdiction governs annexation disputes in New Mexico”]; City of W. Fargo v City of Fargo, 251 NW2d 918, 920 [ND 1977] [“We hold that West Fargo’s (annexation) proceedings have priority, under the general rule that the proceedings first in time are first in right”]; State ex rel. Ferris v Shaver, 163 Ohio St 325, 327, 126 NE2d 915, 916 [1955] [“where power is given by statute to two different governmental boards to act with reference to the same subject matter, exclusive authority to so act is acquired by the board first acting under the power”]; Landis v City of Roseburg, 243 Or 44, 51, 411 P2d 282, 286 [1966] [“as between the conflicting claims of rival municipal bodies for the same authority over the same area, that the first to obtain jurisdiction of the subject matter may have the other enjoined or ousted via quo warranto proceedings while its proceedings are pending”]; City of Houston v State ex rel. City of W. Univ. Place, 142 Tex 190, 194, 176 SW2d 928, 930 [1943] [“The doctrine of such prior jurisdictional right is well established”]; Application for Incorporation of Vil. of St. Francis, 208 Wis 431, 436, 243 NW 315, 317 [1932] [“the (annexation) proceedings first instituted have precedence”]).
This court is aware of only one state whose highest court explicitly rejected the application of the prior jurisdiction rule to annexation proceedings (see Town of Minturn v Sensible Hous. Co., 273 P3d 1154, 1158, 2012 CO 23, ¶ 13 [2012] [“We hold that the priority rule only applies as between competing judicial proceedings and the court of appeals erred in applying the rule to the annexation, a legislative action”]). Additionally, several states have enacted statutes that supercede the rule by providing for consolidation of annexation proceedings (see City of Des Moines v City Dev. Bd. of State of Iowa, 473 NW2d 197, 200 [Iowa 1991] [“Under section 368.11, ‘(t)he board may combine for consideration petitions or plans which concern the same territory or city.’ We believe the legislative intent from this language that a municipality seeking to involuntarily annex a given territory, will not enjoy exclusive jurisdiction even though that municipality was the first to initiate such proceedings”]; Village of Farmington v Minnesota Mun. Commn., 284 Minn 125, 131, 170 NW2d 197, 202 [1969] [“The commission has jurisdiction over both consolidation and annexation proceedings of the type involved in this case. Thus, unlike the situation which prevailed at the time of the Spring Lake Park *912 case, the ultimate decision on both petitions can now be made by a single administrative agency”]; In re Enlargement & Extension of Mun. Boundaries of City of D’Iberville, 867 So 2d 241, 259-260 [Miss 2004] [“Today we declare as antiquated the prior jurisdiction doctrine as it relates to municipal annexation litigation in Mississippi, and to the extent that any of our prior cases have recognized and applied this doctrine, these prior cases are to that limited extent overruled. Certainly our learned chancellors, for the sake of judicial economy and in fairness to annexation litigants, can consolidate multiple annexation cases involving common tracts of disputed territory”]).[6]
Many of the states that have applied the prior jurisdiction rule to annexation proceedings have relied heavily on a treatise, McQuillin on Municipal Corporations, which states,.in relevant part:
“The rule that among separate equivalent proceedings relating to the same subject matter, that one which is prior in time is prior in jurisdiction to the exclusion of those subsequently instituted, applies, generally speaking, to and among proceedings for the municipal incorporation, annexation, or consolidation of a particular territory. In proceedings of this character, while the one first commenced is pending, jurisdiction to consider and determine others concerning the same territory is excluded. Thus, where two or more bodies or tribunals have concurrent jurisdiction over a subject matter, the one first acquiring jurisdiction may proceed, and subsequent purported assumptions of jurisdiction in the premises are a nullity. This principle of the common law is based upon the general public policy of the promotion of the orderly administration of government and justice. Thus, the first of two or more annexation proceedings prevails over those subsequently commenced relating to the same territory. However, the second proceeding may gain priority *913 if the first proceeding is abandoned, defeated or otherwise deemed invalid.” (2 McQuillin, The Law of Municipal Corporations § 7:39.1 [3d ed].)
While treatises and the case law of other jurisdictions provide persuasive authority, this court recognizes that none of these sources of law are binding. However, taking into account New York’s statutory annexation scheme, and considering the potential policy implications of permitting multiple annexation proceedings of the same territory, this court finds that the prior jurisdiction rule provides for exclusive jurisdiction of the KJ petition until that matter is finally concluded.
If this court were to reject application of the prior jurisdiction rule, because of the statutory scheme set forth in the Municipal Annexation Law, the door would be open to allow multiple municipalities to simultaneously attempt to annex the same territory, creating a potentially chaotic race to completion that could deprive earlier filers of the full benefits of the law. For example, the statute sets forth mandatory time periods for completion of the annexation procedures (i.e., 20 days to publish notice of a public hearing, to be held within 20 to 40 days from the date of the notice, to be followed, if the boards unanimously approve the annexation, by referendum to be held within 90 days), which could be completed more quickly by municipalities racing to defeat another annexation proceeding (see Mayor & Town Council of Oakland v Mayor & Town Council of Mtn. Lake Park, 392 Md 301, 329-330, 896 A2d 1036, 1053-1054 [2006, Cathell, J., concurring] [“The annexation statutes, in my view, contemplate an orderly annexation process. . . . When two or more municipalities are fighting each other (over the acquisition of tax base by one entity and the efforts of the other to stop development) via annexation, the resulting fracas, as in the present case, is far from orderly”]).
Further, the law provides for Appellate Division review of the issue of whether the proposed annexation would be in the overall public interest if the affected municipalities cannot agree on that issue. The court views this provision as a mechanism for subordinating the parochial objection of a municipality to the annexation of its land to the greater public good. While, as a practical reality, it is reasonable to expect that most municipalities would be resistant to cede territory comprising their tax base to another municipality, Appellate Division review could theoretically benefit a small group of *914 residents seeking to leave a municipality where they have little political influence. However, if a second petition to annex overlapping territory to a different municipality is permitted to proceed to completion on a faster track, the approval of the latter-filed petition would deprive the Appellate Division of jurisdiction to determine the. “over-all public interest” of the first petition. Thus, the original petitioners could be deprived of their right to be annexed to their preferred municipality, simply because their process would, by necessity, be lengthier by virtue of the need for appellate review.
Even a minuscule overlap in the territory proposed for annexation could render the first proceeding academic, potentially opening the annexation process up to abuse (see e.g. Landis v City of Roseburg, 243 Or 44, 52, 411 P2d 282, 286 [1966] [“the rule of preference as between rival municipal bodies is a rule of necessity to prevent the abuses that would arise when two governmental powers are attempting to exercise authority over the same territory”]).
Further, in the somewhat analogous issue of multiple incorporation petitions, the Second Department has ruled that the Town of Ramapo Supervisor was precluded from processing a petition for incorporation of the proposed Village of Viola Heights “because it consisted of territories which were part of other incorporation petitions then in the appellate process” (Matter of Luria v Conklin, 139 AD2d 650, 650 [2d Dept 1988]). Further, the Court held that “[t]he Supervisor should have waited until the appellate process was complete in order to avoid the possibly undesired result of one piece of property being part of two different incorporated villages in contravention of the statutory mandate” (id.). Besides the fact that incorporations and annexations involve the creation and alteration of existing political boundaries, the process of incorporation is similar to the process of annexation, among other ways, in that both processes may be commenced by the filing of a petition by 20% of the residents or 50% of the owners of taxable property (compare Village Law § 2-202 [1] [a] with General Municipal Law § 703), both processes are entitled to public hearings (compare Village Law § 2-204 with General Municipal Law § 704), determinations with regard to the sufficiency of the petitions are subject to judicial review (compare Village Law § 2-210 with General Municipal Law § 711 [3]), and both processes are ultimately concluded by referendum (compare Village Law § 2-212 with General Municipal Law § 713 [1]). *915 Thus, the holding of Conklin is closely analogous to the matter presented here and supports the same result.
Additionally, while some jurisdictions have expressly rejected the prior jurisdiction rule by enacting statutes to permit consolidation of multiple annexation petitions, New York’s Municipal Annexation Law does not explicitly provide for consolidation. For instance, in Village of Farmington v Minnesota Mun. Commn., the Minnesota Supreme Court held that the prior jurisdiction rule was no longer controlling in light of legislation permitting the “ultimate” determination on multiple annexation petitions to be made by “a single administrative agency” (284 Minn 125, 131, 170 NW2d 197, 202). However, in New York, the prospects of consolidating multiple overlapping petitions by different municipalities is rendered problematic since the “ultimate” determination in this state rests with the residents of the subject territory, by way of referendum (see Matter of City of Utica v Town of Frankfort, 10 NY3d 128 [2008]). Thus, permitting multiple annexation petitions for overlapping territory to simultaneously proceed to referenda could result in a multitude of overlapping special elections, with some residents entitled to vote on more than one proposed annexation, and other residents entitled to vote on only one, which inherently poses a risk of incompatible election results.[7]
Thus, after conducting an exhaustive review and analysis of the issue, this court concludes that the prior jurisdiction rule should be followed to provide that, once the municipal annexation process has commenced by the filing of a petition for annexation, the affected municipalities shall have exclusive jurisdiction over any annexation of the territory at issue until the annexation process is finally concluded. The filing of a petition for annexation is the first formal step in the annexation process, entitling that petition to priority (see City of Jeffersontown v City of Hurstbourne, 684 SW2d 23, 25 [Ky Ct App 1984] [“we consider that there need be only a petition for incorpora *916 tion filed with the circuit clerk which commences the action thereby constituting the first step”]; 2 McQuillin, The Law of Municipal Corporations § 7:39.1 [3d ed] [“The taking of the first mandatory public procedural step in the statutory process for incorporation or annexation of territory ordinarily fixes the date of the commencement of the proceedings, for the purpose of the rule as to jurisdictional priority”]).
However, once the first annexation process is finally concluded, the second-filed annexation petition, if not rendered academic, shall have priority over any subsequently-filed annexation petition involving the same territory (see Matter of Luria v Conklin, 139 AD2d 650, 650 [2d Dept 1988] [“(t)he Supervisor should have waited until the appellate process was complete”]; Appeal of City of Lenexa to Decision of Bd. of County Commrs. of Johnson County , 232 Kan 568, 578, 657 P2d 47, 57 [1983] [“Once the proceeding is terminated adversely to the first city, however, the priority which accompanied the original valid proceeding vanishes”]; 2 McQuillin, The Law of Municipal Corporations § 7:39.1 [3d ed] [“the second proceeding may gain priority if the first proceeding is abandoned, defeated or otherwise deemed invalid”]).
Accordingly, the petitioners’ first cause of action for a writ of prohibition is granted, and the respondent municipalities are prohibited from processing the individual respondents’ annexation petition until such time as proceedings on the KJ petition are finally concluded.
IV. Cross Claims and Counterclaims are Dismissed
In light of the foregoing, since proceedings on the BG/SBG petitions are contingent upon the KJ petition being terminated without an annexation occurring, Monroe and South Blooming Grove’s cross claims and counterclaims seeking clarification regarding their obligations under SEQRA with respect to the BG/SBG petitions are not ripe for review. Accordingly, the cross claims and counterclaims are dismissed without prejudice.
Based upon the foregoing, it is hereby, ordered that the branch of the individual respondents’ motion which is to dismiss the second cause of action pursuant to CPLR 3211 (a) (7) is granted, and the motion is otherwise denied; and it is further adjudged that the petitioners’ first cause of action for a writ of prohibition is granted, and the respondent municipalities are prohibited from processing the individual respondents’ annexation petitions until such time as proceedings on the petitioners’ earlier-filed annexation petition are finally *917 concluded; and it is further ordered that all cross claims and counterclaims are dismissed; and it is further ordered that the proceeding is dismissed; and it is further ordered that all other relief requested and not decided herein is denied.

. The Municipal Annexation Law provides that land may be simultaneously annexed by a town and a village situated in whole or in part within such town (see General Municipal Law § 716 [9]).

. The annexation petitions in this matter involve both types of petitions. The KJ petitioners purportedly represent the owners of a majority of the assessed value of the real property in the relevant area, and the BG/SBG petitioners purportedly represent 20% of the residents in the relevant area.

. A determination by a governing board that the petition for annexation was not in compliance with the Municipal Annexation Law is subject to review pursuant to CPLR article 78.

. The citation for Moore v Prior given in Rogers v King is “2 Young & Coll. Rep. 375,” however, this court was able to locate a report of Moore v Prior in the Law Journal Reports (vol 6, part 1 of the New Series, Court of Exchequer in Equity at 74 [1937]), available at https://books.google.com/ books?id=7XgDAAAAQAAJ.

. The court’s review found 18 jurisdictions that held the common-law prior jurisdiction rule applies to annexations proceedings, and only one, Colorado, which has explicitly rejected it.

. The court notes that two states’ highest courts declined to rule on the issue (see City of Elkhorn v City of Omaha, 272 Neb 867, 884, 725 NW2d 792, 807 [2007] [“We need not determine whether to adopt the prior jurisdiction rule because we conclude that the rule is not applicable when different territories are the subject of the competing annexations”]; Mayor & Town Council of Oakland v Mayor & Town Council of Mtn. Lake Park, 392 Md 301, 327 n 17, 896 A2d 1036, 1052 n 17 [2006] [“We express no view concerning the prior jurisdiction rule as it is not an issue before the Court in this case”]).

. The court takes notice of the fact that, in Matter of Town of Lansing v Village of Lansing (80 AD2d 942, 942 [3d Dept 1981]), three separate annexation petitions were, in effect, consolidated by the Appellate Division, Third Department, when the Court designated one set of referees to preside over a single trial on the issue of the “over-all public interest” of the annexations. However, Town of Lansing is distinguishable from the instant matter insofar as that matter involved what were essentially counterproposals between two affected municipalities, not an attempt by a third municipality to annex territory that is the subject of a pending annexation proceeding.